# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

**ANTONIO MARQUISE CROCKETT,**   )
                                    )
        **Plaintiff,**         )
                                    )
**v.**                                )     **NO. 3:22-cv-00260**
                                    )
**WARDEN TONY MAYS, et al.,**    )
                                    )
        **Defendants.**      )

## <u>MEMORANDUM OPINION</u>

Antonio Crockett, an inmate at the Riverbend Maximum Security Institution in Nashville, Tennessee, filed a pro se Complaint for violation of civil rights under 42 U.S.C. § 1983. (Doc. No. 1). The Court returned the Complaint to Plaintiff because it was unsigned. (<u>See</u> Doc. No. 4). Plaintiff promptly signed and returned the Complaint (Doc. No. 6) along with an application for leave to proceed in forma pauperis (IFP). (Doc. No. 9). He also filed two subsequent motions related to his IFP application. (Doc. Nos. 10, 11).

The case is before the Court for ruling on Plaintiff's IFP application and related motions, and for initial screening under the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## I. APPLICATION TO PROCEED IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 9) will be **GRANTED** by separate order.

## II. INITIAL REVIEW

### A. Legal Standard

The Court must conduct an initial review and dismiss the Complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e. Review of the Complaint to determine whether it states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" Tackett v. M & G Polymers, USA, LLC, 561F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975)).

Plaintiff sues under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or

immunity secured by the Constitution or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a viable Section 1983 claim, Plaintiff must allege (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. Carl v. Muskegon Cnty., 763 F.3d 592, 595 (6th Cir. 2014).

## B. Allegations and Claims

Claiming violations of his Fourth, Eighth, and Fourteenth Amendment rights (Doc. No. 6 at 3), Plaintiff alleges that hidden cameras were illegally installed in his cell, where he was recorded "pleasing [him]self sexually" on February 27, 2022. (Id. at 4). The next day, Plaintiff heard other inmates whispering about the things he was doing in his cell the night before. (Id.). He discovered that Officer Winsted had "replayed the incident for all the inmates thru the DVD player,"[1] and that "still shot pictures" of his activities were "being passed around amongst the inmates in 3A pod." (Id. at 4–5). When Plaintiff asked Officer Winsted if there were cameras in his cell, Winsted "laughed it off." (Id. at 5). But Plaintiff continued to hear other inmates "laugh and joke about the photos and videos they've seen." (Id.). He alleges that his life is in danger because he is a known gang member and "the pictures and videos could be looked at as homosexual." (Id.). He alleges that he "went to suicide wat[ch] seeking help for [his] mental state" and "to remove [him]self from the unit." (Id. at 6, 15).

In an addendum to the Complaint, Plaintiff claims that seven Defendants—Tennessee Department of Correction Commissioner Tony Parker, Warden Tony Mays, Unit Manager Fish, Sgt. Micah Pearson, CO Winsted, CO Strickland, and Cpl. Barber—subjected him to illegal search

---

[1] In a subsequent motion, Plaintiff alleges that the cameras in his cell are "hooked up to a DVD in Unit 3A UC Control booth," and he seeks the production of the DVD. (Doc. No. 10 at 2).

and seizure, cruel and unusual punishment, and discrimination. (Id. at 13). He describes an electrical issue on the evening in question that resulted in him receiving additional channels on the television in his cell—one of which contained "a red dot [and] a red box" outlining the screen, "with the word [']record[']" in it—which he observed before engaging in intimate activities. (Id. at 14). Plaintiff asserts that prison "staff have deliberately showed videos and passed out pictures that are circulating thru the pod" revealing the events, described above, that occurred in his cell on "maximum security [administrative segregation] placement." (Id. at 13, 14). He alleges that "CO Strickland is for sure one of the officers showing the footage of [his] cell on the DVD player at night time," and that Strickland printed a copy of the still images and gave them to an inmate that Plaintiff does not "see eye to eye with." (Id.). When he went on suicide watch, Plaintiff heard officers "playing the video and laughing" with the inmate worker at the clinic. (Id. at 15). As relief for the alleged deprivation of his rights, Plaintiff seeks to be transferred to Lois DeBerry Special Needs Facility "for safe keeping" and requests monetary damages for his mental anguish and suffering. (Id. at 6, 15).

**C. Analysis**

Plaintiff's constitutional claims derive from an alleged nighttime recording of his private, intimate activities in his prison cell. Inmates' privacy rights are necessarily curtailed in the prison setting, where security concerns are obviously paramount. But the U. S. Court of Appeals for the Sixth Circuit "has joined others in recognizing that a convicted prisoner maintains some reasonable expectations of privacy while in prison, particularly where [his] claims are related to forced exposure to strangers of the opposite sex, even though those privacy rights may be less than those enjoyed by non-prisoners." Cornwell v. Dahlberg, 963 F.2d 912, 916 (6th Cir. 1992). In the context of the privacy right inherent in the Fourth Amendment's prohibition of unreasonable searches, the

4

Sixth Circuit has stated that regular surveillance of an inmate "using a toilet in [his] cell" by officers of the opposite sex "would provide the basis of a claim on which relief could be granted." Mills v. City of Barbourville, 389 F.3d 568, 579 (6th Cir. 2004) (citing Kent v. Johnson, 821 F.2d 1220, 1226 (6th Cir.1987)).

Although Plaintiff does not allege that any surveillance footage from his cell was reviewed by officers of the opposite sex, it is not clear that such facts are required to plausibly claim violation of an inmate's privacy rights under the Fourth Amendment. Even if they are, the Fourteenth Amendment "protects an individual's right to control the nature and extent of information released about that individual" where a fundamental right is implicated. Bloch v. Ribar, 156 F.3d 673, 683–84 (6th Cir. 1998). And even in the prison setting, information regarding "highly personal and private . . . sexual matters" is arguably sufficient to implicate a fundamental privacy right that "prevent[s] government officials from gratuitously and unnecessarily releasing the intimate details." Id. at 685–86. The concern with such distribution may be particularly acute here, where the information was allegedly delivered to "the whole population of the prison" (Doc. No. 6 at 5) not merely by description, but in video and photographic form. Cf. Moore v. Prevo, 379 F. App'x 425, 428 (6th Cir. 2010) (holding that inmates have a Fourteenth Amendment privacy interest, subject to legitimate penological interests, in guarding against distribution of their sensitive medical information to the inmate population).

Accordingly, liberally construing the Complaint's allegations in the light most favorable to Plaintiff at this initial stage, the Court finds that he sufficiently pleads claims under the Fourth and Fourteenth Amendments for violation of his right to privacy. Those claims will be allowed to proceed for further development against Correctional Officers Winsted and Strickland, the

Defendants alleged to be personally involved with the recording and distribution of Plaintiff's private activities.

The Court also liberally construes the Complaint to raise an Eighth Amendment claim of deliberate indifference to Plaintiff's safety, based on allegations that compromising images were distributed to the entire prison population (including at least one inmate with whom Plaintiff did not "see eye to eye") despite Plaintiff's gang affiliation which puts him at greater risk of physical violence. "To raise a cognizable constitutional claim for deliberate indifference to an inmate's safety, an inmate must make a two-part showing: (1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety." Bishop v. Hackel, 636 F.3d 757, 772 (6th Cir. 2011) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Based on allegations that Defendants Winsted and Strickland broadcast these compromising images to the whole prison despite knowing that Plaintiff was affiliated with a gang and may be targeted as a result, this Eighth Amendment claim is sufficiently pled for purposes of initial review and will also be allowed to proceed against these Defendants.

The Complaint does not support any claim against the remaining Defendants, however, in either their individual or official capacities. Though they are named as Defendants, Commissioner Parker, Warden Mays, and Sgt. Pearson are not otherwise mentioned in the Complaint. "It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal as to that defendant, even under the liberal construction afforded to pro se complaints." Green v. Correct Care Sols., No. 3:14-cv-01070, 2014 WL 1806997, at *4 (M.D. Tenn. May 7, 2014) (citing cases); see also Murphy v. Grenier, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.") (citing Gibson v. Matthews, 926

F.2d 532, 535 (6th Cir. 1991)). Cpl. Barber and Unit Manager Fish are only mentioned, respectively, as being unresponsive to Plaintiff's initial complaint about loss of electrical power and his subsequent inquiry into whether a hidden camera had been placed in his cell (Doc. No. 6 at 8–9, 13–14); they are not alleged to be complicit in the recording or distribution of Plaintiff's private activities. The Complaint cannot be construed as asserting any official-capacity claims, nor are the individual-capacity claims against these higher ranking, supervisory officials supported by anything more than the fact of their role as supervisors. But "a supervisor cannot be held liable [under Section 1983] simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another," or because he or she merely failed to take supervisory action. Peatross v. City of Memphis, 818 F.3d 233, 241 (6th Cir. 2016) (citing Gregory v. City of Louisville, 444 F.3d 725, 751 (6th Cir. 2006)). Accordingly, Defendants Parker, Mays, Pearson, Barber, and Fish will be dismissed from this action.

### III. CONCLUSION

As explained above, the Court finds that the Complaint states nonfrivolous claims against Defendants Winsted and Strickland. The claims against these Defendants will proceed for further development, while all other Defendants will be dismissed.

Because Plaintiff's IFP application will be granted, his Motions for Extension of Time to File an IFP Application (Doc. No. 10) and to Check Files for IFP application (Doc. No. 11) will be denied as moot. His request "to Subpoena DVD" (Doc. No. 10 at 2) will be denied as premature, as such information may be requested in discovery.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE